IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:20-CR-223 |
| | ) | |
| MAURICE VINSHAWN CATES, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant, Maurice Cates, has filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mr. Cates asks the Court to reduce his sentence to home detention based on the living and custody situation of two of his minor children. The motion will be denied because Mr. Cates has not shown that he is the only suitable caregiver available and the sentencing factors do not support a sentence reduction.

### I.    Procedural History

In August 2020, Mr. Cates pled guilty to one count of possession of a firearm by a felon. Minute Entry 08/04/2020; Doc. 1. On October 29, 2020, he was sentenced to 84 months imprisonment followed by three years of supervised release. Minute Entry 10/29/2020; Doc. 17 at 2–3.

On September 28, 2022, Mr. Cates filed a motion for compassionate release asserting that the mothers of two of his minor children are no longer capable caregivers. *See* Doc. 19. He is seeking a sentence reduction so he can become the primary caregiver for his children. *Id.* at 5; Doc. 19-3 at ¶ 4. The Court appointed counsel to assist Mr.

Cates, Doc. 21, who has filed supplemental briefs and additional evidence. *See* Docs. 24–26, 29. Mr. Cates also filed a *pro se* letter. *See* Doc. 27. The Probation Office has filed a memorandum. *See* Doc. 30. The government opposes the motion. *See* Doc. 31.

## II. Relevant Facts

### A. Criminal History and Crime of Conviction

Mr. Cates has a lengthy criminal history, including misdemeanor and felony theft offenses, Doc. 14 at ¶¶ 28, 36, 39,[1] misdemeanor assaults, *id.* at ¶¶ 29–30, 33, 36, 38, misdemeanor and felony drug offenses, *id.* at ¶¶ 32, 34, 37, 39, 43, and felony firearm offenses. *Id.* at ¶¶ 41–42. Many of the misdemeanors were serious crimes establishing a history of violent behavior. *See, e.g.*, *id.* at ¶ 29 (assault resulting in a fractured orbital bone); *id.* at ¶ 30 (forcing someone to strike another); *id.* at ¶ 33 (repeatedly hitting someone in the head with a gun); *id.* at ¶ 36 (assault with a metal pipe); *id.* at ¶ 38 (pushing a pregnant woman down the stairs and punching her).

Before his current incarceration, Mr. Cates had received probation, community service, and relatively short terms of incarceration upon his previous convictions. *See id.* at ¶¶ 28–41. He often did not comply with the terms of his probation by, among other things, failing to report as directed and absconding, *id.* at ¶¶ 32, 36–37, and by committing new crimes while under supervision. *Id.* at ¶¶ 32, 36, 38.

The conduct underlying Mr. Cates' crime of conviction involved more drugs and firearms. In September 2019, officers searched Mr. Cates' home after a confidential

---

[1] The Court adopted the presentence report, Doc. 14, without change. Doc. 18 at 1.

2

informant purchased cocaine base from Mr. Cates three different times. *Id.* at ¶¶ 6–7. The officers found a firearm in his bedroom, and later discovered it had been reported stolen. *Id.* at ¶ 7. The officers also found cocaine hydrochloride in his house and a scale in a car parked at the residence. *Id.* Mr. Cates admitted to possession of the firearm but denied knowing that it was stolen. *Id.* at ¶ 8. He told the officer "that he stopped selling drugs the day before 'in an effort to live right' and the cocaine hydrochloride found in the bedroom was for personal use." *Id.*

In June 2020, Mr. Cates was indicted for possession of a firearm by a felon. Doc. 1. He pled guilty in August. Minute Entry 08/04/2020. The guideline range was 100 to 120 months, Doc. 14 at ¶ 94, Doc. 18 at 1, but the Court found that a guideline range sentence was not necessary in light of Mr. Cates' mental health conditions and the fact that he had not previously served a long sentence. Doc. 18 at 3. He received a sentence of 84 months followed by three years of supervised release. Doc. 17 at 2–3. Mr. Cates is currently 33 years old. *See* Doc. 14 at 2 (showing date of birth as March 7, 1989).

Mr. Cates has been in custody some 26 months, almost a third of his sentence. *See* Doc. 14 at ¶ 3 (noting Mr. Cates "was released to pretrial supervision"); Minute Entry 10/29/2020 (noting Mr. Cates went into custody at sentencing). He is currently scheduled to be released on November 8, 2026. *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Jan. 9, 2023).

## B. The Current Motion

Mr. Cates contends that L.C. and K.C., two of his children with different mothers, are in abusive home environments. *See* Doc. 24 at ¶ 3; *id.* at 2–5; Doc. 27 at 1. He

3

reports having positive relationships with his children before his incarceration. Doc. 24 at 3–4. He asks for compassionate release so that he, along with his fianceé, Lenora Robertson, can become the primary caregivers of these two children. Doc. 19-2 at 3.

The evidence shows that the first child, L.C., had a recent physical altercation with her mother. Doc. 25-1 at 4, 16. DSS substantiated neglect, improper discipline, and injurious environment. *Id*. at 16. After this event, L.C. temporarily stayed with Ms. Robertson. Doc. 25 at 2. DSS considered this to be "an isolated incident" and labeled the risk as "moderate." Doc. 25-1 at 16. DSS closed the case in August 2022 without removing L.C. from her mother's custody. *See id*. at 21. Counsel for Mr. Cates noted that L.C. recently ran away from her mother's house, but he is unaware "of the circumstances surrounding her leaving the home." Doc. 26 at 1.

The evidence also shows that the second child, K.C., was in a physical altercation with her mother that left bruises. Doc. 29-1 at 12. Although K.C. temporarily stayed with her godmother, Debra Bingham, after this event, she eventually returned to her mother's home. Doc. 25 at 2; Doc. 29-1 at 14–15. A medical provider found that K.C.'s physical exam was "concerning" for physical and emotional abuse. Doc. 29-1 at 17, 31–33. DSS eventually substantiated neglect, improper discipline, and improper medical/remedial care by the mother. *Id*. at 21–22. DSS closed the case in October 2022; K.C. was not removed from her mother's custody. *Id*. at 22.

In early November 2022, counsel for Mr. Cates supplemented the motion to note that K.C. was allegedly assaulted by her mother again. Doc. 26 at 1. Mr. Cates also filed a paper writing around this time noting that K.C. ran away from her mother's home.

Doc. 27 at 5. The investigation into this second incident is still pending. Doc. 26 at 1; Doc. 26-1. In the meantime, counsel noted that K.C. "is temporarily living with her paternal grandmother, Besse Richardson, until DSS directs otherwise." Doc. 26 at 1.

Upon investigation, the Probation Office determined that as of December 1, 2022, "Mr. Cates' mother and Ms. Robertson are currently sharing the responsibility" for the two children. Doc. 30 at 2.

### III. Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart." (cleaned up)). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement, when invoked by the government. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). The government has not invoked it here. *See* Doc. 31.

Section 3582(c)(1)(A) also requires that extraordinary and compelling reasons merit a reduction in sentence, that the reduction is consistent with any applicable policy statements issued by the Sentencing Commission, and that the relevant § 3553(a) sentencing factors do not counsel against early release. *See United States v. McCoy*, 981

F.3d 271, 275 (4th Cir. 2020); *United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). Even if the court finds that extraordinary and compelling reasons support release, the court in its discretion may deny a defendant's motion after balancing the applicable § 3553(a) factors. *High*, 997 F.3d at 186.

## A. Extraordinary and Compelling Reasons

Mr. Cates contends that extraordinary and compelling reasons exist because he is needed as the primary caregiver to his two children who "have faced abuse at the hands of their mother" and have been exposed to "an environment filled with drug abuse." Doc. 19 at 5. The death or incapacitation of the caregiver of the defendant's minor children may constitute an extraordinary and compelling reason warranting release. *See generally* U.S.S.G. § 1B1.13, cmt. 1(C); *see also McCoy*, 981 F.3d at 282 n.7 (explaining that § 1B1.13 "remains helpful guidance even when motions are filed by defendants"); *United States v. Pilgrim*, No. 19-CR-50, 2021 WL 2003548, at *3 (E.D. Va. May 19, 2021). "However, courts generally deny compassionate release when another suitable caregiver is available for the defendant's child." *United States v. Lottier*, No. 16-CR-30, 2020 WL 7233363, at *2 (W.D. Va. Dec. 7, 2020) (collecting cases); *see also United States v. Hall*, No. 4-CR-323, 2022 WL 2105975, at *3 (D. Md. June 10, 2022) (noting "compassionate release based on family circumstances has only been granted where a defendant is the sole available caregiver for his or her minor child" and collecting cases); *United States v. Guest*, 16-CR-499, 2022 WL 2104492, at *13 (D. Md. June 9, 2022) (noting that the defendant must typically show he is the "sole available caregiver for his child" and collecting cases).

6

The record shows that Mr. Cates' two children are in unstable home environments. But Mr. Cates has not shown that there is no other suitable caregiver for his two children. K.C. temporarily stayed with her godmother, Debra Bingham, after the altercation with her mother. Doc. 25 at 2; Doc. 29-1 at 14. And L.C. stayed with Mr. Cates' fiancé, Ms. Robertson, after the altercation with her mother. Doc. 25 at 2. As of December 1, 2022, Probation determined that Mr. Cates' mother and Ms. Robertson are now sharing responsibility for the two children. Doc. 30 at 2. Ms. Robertson is willing to care for the children, and there is nothing in the current record to indicate she would not be a suitable caregiver. *See* Doc. 24 at 2 (noting Ms. Robertson has no criminal record, is employed, and is working towards a degree in early childhood education). Mr. Cates himself notes that he and Ms. Robertson "would together take in both" of his children. Doc. 19-2 at 3. He has not shown that he is the sole caregiver available.

Mr. Cates has also not shown that, if released, he would be a suitable caregiver for his two children. DSS would have to conduct a home assessment and develop a safety plan. Doc. 30 at 2. Mr. Cates has a history of assaults, including domestic violence, *see, e.g.*, Doc. 14 at ¶ 38, and the instant offense involved drug sales from a residence where he lived with his fiancée and small children. *See id.* at ¶¶ 6–7, 75 (reflecting he lived with Ms. Robertson and two children at same address where the offense took place). He has significant substance abuse treatment needs himself, along with mental health issues. *Id.* at ¶¶ 81–85.

These two children are clearly having very difficult times and no doubt would benefit from the presence of a stable father in their lives. But that is not the test, even if

7

one assumes that Mr. Cates could offer stability. *See Pilgrim*, 2021 WL 2003548, at *3 ("[T]he Court is confronted on a regular basis with the fact that defendants who are incarcerated are separated from their families . . . . For that reason, those circumstances simply cannot be considered extraordinary."). Other family members have stepped up to look after these children, and at least one of his children appears to need a more therapeutic environment to deal with significant mental health needs. Mr. Cates has not shown extraordinary and compelling circumstances.

### B. Section 3553(a) Factors

In evaluating a compassionate release motion, the statute requires courts to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). If the § 3553(a) factors weigh against release, courts have discretion to deny the motion, regardless of the existence of extraordinary and compelling circumstances. *High*, 997 F.3d at 186.

Even if the Court found extraordinary and compelling circumstances based on the situations of his two children, the sentencing factors weigh against release. At sentencing, the Court varied downward to 84 months in part because Mr. Cates' longest term of custody before the instant offense was only two years. Doc. 18 at 3. But a long sentence was entirely appropriate, given the nature and extent of Mr. Cates' criminal history and the fact that previous short sentences did not deter him from new crimes. Mr. Cates has only served about 26 months so far, *see* Minute Entry 10/29/2020; that is not much longer than the two year sentence he previously served, which did not deter him

from ongoing criminal conduct. A longer sentence is needed to adequately deter Mr. Cates from committing new crimes in the future.

Reducing Mr. Cates' sentence also would not reflect the seriousness of his offense, provide just punishment, or show respect for the law. Mr. Cates was arrested after a confidential informant purchased drugs at his home on three different occasions. Doc. 14 at ¶¶ 6–7. And despite having two previous firearm charges, *id.* at ¶¶ 41–42, officers found a stolen firearm in his possession. *Id.* at ¶¶ 7–8. This is not "victimless" conduct as Mr. Cates contends. *See* Doc. 19-2 at 2.

The Court appreciates Mr. Cates' efforts at rehabilitation, *see* Docs. 31-3, 31-4, 31-5, his almost spotless disciplinary record, *see* Doc. 31-2, and his plan to work as a carpenter or with his former employer. Doc. 19-2 at 3; Doc. 30 at 2; Doc. 24 at 7. But his efforts do not outweigh his criminal history and the seriousness of the offense.

## IV. Conclusion

Mr. Cates has not shown that extraordinary and compelling circumstances warrant a sentence reduction because he has not shown that he is the only suitable caretaker available for his children. Even if he had, given his criminal history and the nature of his offense, the sentencing factors weigh against release.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 19, as supplemented, Docs. 24–25, is **DENIED**.

This the 12th day of January, 2023.

UNITED STATES DISTRICT JUDGE